# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

No. 22-235V

|  |  |
|---|---|
| MAISE JOHNSON,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: October 30, 2023 |

*Laura Levenberg*, Muller Brazil, Dresher, PA, for Petitioner.

*Andrew Henning*, U.S. Department of Justice, Washington, DC, for Respondent.

## **FINDINGS OF FACT**[1]

On March 2, 2022, Maise Johnson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received in her left shoulder on December 13, 2020. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

The specific vaccine administration record does not support Petitioner's contention that she received the subject flu vaccine in her left shoulder as alleged. Ex. 1 at 3.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Nevertheless, for the reasons discussed below, and based on the totality of the record evidence relevant to the topic, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's left shoulder.

## I. Relevant Procedural History

Along with her petition, Petitioner filed her vaccination record, medical records, and a witness declaration, followed by a statement of completion on March 4, 2022. ECF Nos. 1, 7. On December 1, 2022, Respondent filed a status report with his informal assessment of the claim. ECF No. 14. Respondent did not describe issues that would preclude this case from staying in SPU. *Id.* at 2.

On June 7, 2023, while this case awaited medical review, Petitioner filed an additional witness declaration in support of site of vaccination. ECF No. 19. Petitioner then confirmed that, based on the submitted evidence and existing caselaw regarding situs, she would not be filing additional evidence on that issue. Informal Comm., docketed June 16, 2023. On July 7, 2023, following a medical review of this case, Respondent submitted a status report requesting to file a Rule 4(c) Report and inviting a demand from Petitioner. ECF No. 21.

Petitioner submitted a settlement demand to Respondent on August 28, 2023. ECF No. 23. The same day, rather than filing his Rule 4(c) Report as requested, Respondent filed a status report stating that he "is amenable to informal resolution" of this case and asking to suspend the Rule 4(c) deadline until the parties have had a chance to explore settlement discussions. ECF No. 24. As support, Respondent noted that no formal fact finding on situs had been made at that time. *See* Informal Comm., docketed Oct. 4, 2023.

I have determined that a factual ruling regarding the site of vaccination is required and will assist in the case's ultimate disposition. Thus, the issue of the site of Petitioner's December 13, 2020 flu vaccination is now ripe for resolution.

## II. Issue

At issue is whether Petitioner received the vaccination alleged as causal in her left arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act

Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special

master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Finding of Fact

The following finding of fact is based on a complete review of the record, including the petition, all medical records, affidavits/witness declarations, and additional evidence filed. Specifically, I highlight the following:

- Ex. 1 at 3 - Petitioner's vaccination record, noting she received a flu vaccine on December 13, 2020, in her right deltoid. The notation is an automated, computer-generated entry.

- Ex. 5 ¶ 3 - Petitioner's witness declaration, attesting that her vaccination record is "incorrect." She recalls that she received her vaccination "in the cube in the pharmacy. [Her] back was to the east and there was a small tray table to the south." *Id.* ¶ 4. She continues, "[t]he provider stood in front of [her] and asked which arm for the vaccine. [She] shifted [her] body and give [the administrator her] left shoulder, and that's where [the administrator] gave [her] the vaccine." *Id.* ¶ 5.

- Ex. 2 at 106-08 - a record of Petitioner's December 14, 2020 visit to her primary care provider ("PCP"), at which time she complained of sharp "pain in the left shoulder blade." An x-ray of her left shoulder was ordered. *Id.* This visit occurred a day after vaccination.

- Ex. 3 at 9-11 - a February 4, 2021 record from Petitioner's PCP, noting that she complained of "pain in her left arm that started after the flu shot in December [2020]." Her pain "radiates from her left shoulder to her upper back and right shoulder. She now has issues with ROM in the left shoulder." She was at this time assessed with pain in the left shoulder.

- Ex. 4 at 8-9 - an orthopedic record from February 25, 2021, evaluating Petitioner's "left shoulder pain." It states that Petitioner "got a flu vaccine [and] started developing pain in the lateral brachium of the left shoulder the next day." She was diagnosed with adhesive capsulitis with impingement of the left shoulder.

- Ex. 4 at 16-22 - a March 15, 2021 initial physical therapy ("PT") record for treatment of left shoulder pain. Petitioner attended 13 total sessions for left shoulder adhesive capsulitis through July 16, 2021.

- Ex. 7 ¶ 2 - a witness declaration authored by Petitioner's husband, stating that he was "sure [Petitioner] got the flu vaccine in her left arm." He attests that Petitioner showed him her left arm, "with the bandage[.]" *Id.* ¶ 4. She then "started complaining to [him] that she had pain in her left arm and shoulder . . . . She was unable to put any weight on her left arm, and shoulder so [he] had to help her in and out of bed." *Id.* ¶ 5. He also states that "[w]henever [he] had to help [Petitioner] put her clothes on, it was always the left arm first. *Id.* ¶ 6. She "also had a difficult time putting her car seat belt on because she was unable to grip it with the left arm to get it across." *Id.*

Based on the above evidence, it appears more likely than not that Petitioner's December 13, 2020 flu vaccine was administered in her left shoulder, as alleged. The record of Petitioner's December 14, 2020 visit to her PCP reporting complaints of left shoulder pain (Ex. 2 at 106), is particularly persuasive. This record is from only one day post-vaccination, and is the second-most contemporaneous record (after the vaccine administration record itself). Petitioner immediately reported left-side pain. Then, as the above-referenced medical entries further establish, when seeking medical treatment on multiple occasions thereafter, Petitioner consistently reported left shoulder pain (which she also attributed to her December 2020 vaccination), and she underwent diagnostic procedures, physical therapy exercises, and treatment of a condition (adhesive capsulitis) in the left shoulder. And the submitted witness declarations support a finding that the vaccine was administered in Petitioner's left arm.

I acknowledge that the vaccine administration record *itself* memorializes a different site of the administration of Petitioner's flu vaccine. Ex. 1 at 3. But the record is an automated, computer-generated, electronic entry. *See id.* Based upon my experience resolving SPU SIRVA cases and comparable matters, I find it is not unusual for the information regarding situs of vaccination set forth in this kind of document to be incorrect.[3] In many instances, the information regarding situs is recorded prior to

---

[3] *See, e.g., Arnold v. Sec'y of Health & Hum. Servs.,* No. 20-1038V 2021 WL 2908519, at *4 (Fed. CL. Spec. Mstr. June 9, 2021); *Syed v. Sec'y of Health & Hum. Servs.,* No. 19-1364V, 2021 WL 2229829, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Ruddy v. Sec'y of Health & Hum. Servs.*, No 19-1998V, 2021 WL 1291777, at *5 (Fed. Cl. Spec. Mstr. Mar. 5, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*,

vaccination and is not subsequently corrected, even if the vaccine is then administered in the opposing arm.[4] Thus, although such records are unquestionably the first-generated documents bearing on the issue of site, they are not per se reliable simply because they come first. In fact, I have previously determined that the very nature of vaccination record creation provides some basis for not accepting them at face value. *See, e.g.*, *Rizvi v. Sec'y of Health & Hum. Servs.*, No. 21-881V, 2022 WL 2284311, at *4 (Fed. Cl. Spec. Mstr. May 13, 2022). More so, I routinely give greater weight to vaccination records that are handwritten – meaning those that require specific action on the part of the vaccine administrator, as opposed to those that are automatically generated by a computerized system. *See, e.g.*, *Rizvi,* 2022 WL 2284311, at *5; *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020).

The vaccine administration form at issue in this case is an automated entry in a computerized system. It is the only evidence in this case that contradicts Petitioner's assertion and supports a finding of right arm situs. Given the general unreliability of an automated vaccination record, and when weighed against Petitioner's clear, consistent, and close-in-time reports of left shoulder pain following her receipt of a flu vaccine in that arm, I find by a preponderance of the evidence that Petitioner received her December 13, 2020 flu vaccine in her left arm.

V.    Scheduling Order

Respondent shall file, by no later than <u>Wednesday, November 29, 2023</u>, a status report concerning how he intends to proceed and, if applicable, a proposed deadline for filing his Rule 4(c) Report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

[4] In a recent ruling by another special master, the pharmacist who had administered the relevant vaccination actually testified that she inputs "left deltoid" into the computer system as a matter of course, without confirming the actual site of vaccination, based upon the assumption that most vaccinees are right-handed. *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 1940435, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).